NUMBER 13-00-626-CV

 

COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI

 ___________________________________________________________________ 



J. M. DAVIDSON, INC., Appellant, 



v.

 

CHELSEY J. WEBSTER, Appellee. 

___________________________________________________________________ 



On appeal from the 343rd District Court of San Patricio County, Texas 

and On Petition for Writ of Mandamus.

 ___________________________________________________________________ 



O P I N I O N

 

Before Justices Hinojosa, Yañez, and Castillo

 Opinion by Justice Hinojosa

 

 This is an interlocutory appeal from the trial court's denial of a motion to compel arbitration. In the alternative, appellant,
J. M. Davidson, Inc. ("Davidson"), asks this Court to issue a writ of mandamus ordering the trial court to grant the motion
to compel arbitration. We affirm the trial court's order, and deny appellant's request for a writ of mandamus. 

A. Background and Procedural History

 At the hearing on the motion to compel, the trial court heard only argument from the parties' counsel. Neither party
presented evidence. No affidavits, discovery, or stipulations were offered into evidence. Based on the pleadings,(1) the
following are the undisputed facts. On December 1, 1997, Davidson hired appellee, Chelsey Webster, as a mechanic. On
December 15, 1997, Davidson required that appellee sign an "Alternative Dispute Resolution Policy," which states, in
relevant part, as follows: 

J. M. Davidson, Inc.

 ALTERNATIVE DISPUTE RESOLUTION POLICY



EMPLOYMENT APPLICATION LANGUAGE

 

I, the applicant whose signature is affixed hereto, and the above listed Company, (hereinafter referred to as the
"Company"), for itself and all of its officers, directors, agents and employees, all of which mutually agree and contract that
any and all claims, disputes or controversies, whether based on the Construction [sic], Statutes, Code(s), Ordinances, Rules,
Orders, Regulations, and/or common law of he [sic] United States and/or of all subdivisions, of either, and/or asserted on
the basis of contract, quasi-contract, personal injury, tort, offenses, quasi-offenses or otherwise, or arising out of, or in any
way relating to this application for employment, or any other application for employment that I may have previously
submitted, or may submit in the future, or the Company's decision to hire or not to hire me; including the arbitrability of
any claim, dispute, or controversy shall be exclusively and finally settled by binding arbitration administered by, Conducted
[sic] under the Arbitration Rules of, and before the Arbitrator(s) of an Arbitration Tribunal of the National Association for
Dispute Resolution, Inc., pursuant to the provisions of the Federal Arbitration Act and/or any applicable Alternative
Dispute Resolutions Act, whichever shall have the broadest effect, all claims of any rights to the contrary, including any
right to trail [sic] by jury, being hereby expressly waived. 



* * * * *

 

If employed, I agree to abide by and comply with all of the rules, policies and procedures of the "Company." I understand
that if I am employed by the "Company," such employment will be "at-will" and that the "Company" may terminate my
employment at any time and for any reason. 



* * * * * 



No supervisor or person other than the President of the "Company" can change or otherwise modify any employment
agreement. The "Company" reserves the right to unilaterally abolish or modify any personnel policy without prior notice. 



* * * * *

 

ACCEPTED AND AGREED TO: 



APPLICANT: [signed] PRINTED NAME: C. J. Webster 

DATE: 12-15-97 S.S. # [social security number] 



 Appellee sustained an on-the-job injury on November 3, 1998, and filed for workers' compensation benefits. He
subsequently returned to work. However, appellee's condition deteriorated and his treating physician placed him on "no
work" status. Soon thereafter, appellee's employment with Davidson ceased. 

 Appellee sued Davidson, alleging he had been terminated in retaliation for filing a workers' compensation claim.(2)
Davidson filed a motion to compel arbitration. Davidson asserted that the arbitration policy appellee had signed was a
binding arbitration agreement and that appellee's claims fell within the scope of the agreement. The trial court denied the
motion without stating a reason. Davidson then filed this interlocutory appeal and mandamus action. Davidson seeks to
compel arbitration under the Texas Arbitration Act(3) and the Federal Arbitration Act.(4)

B. Jurisdiction

 Under the Texas Arbitration Act, an interlocutory appeal may be taken from a trial court's denial of a motion to compel
arbitration. SeeTex. Civ. Prac. & Rem. Code Ann. § 171.098(a)(1) (Vernon Supp. 2001). Mandamus is the appropriate
remedy when the trial court improperly denies a motion to compel arbitration pursuant to the Federal Arbitration Act. In re
L & L Kempwood Assocs., L.L.P., 9 S.W.3d 125, 128 (Tex. 1999) (per curiam); EZ Pawn Corp. v. Mancias, 934 S.W.2d
87, 91 (Tex. 1996). Mandamus will issue only to correct a clear abuse of discretion or the violation of a duty imposed by
law when there is no other adequate remedy by law. Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex. 1992). When a party
seeks to compel arbitration under both the Texas Arbitration Act and the Federal Arbitration Act, he must pursue parallel
proceedings: an interlocutory appeal of the order denying arbitration under the Texas act, and a request for a writ of
mandamus from the denial under the federal act. Jack B. Anglin Co., Inc. v. Tipps, 842 S.W.2d 266, 272 (Tex.
1992);Stewart Title Guar. Co. v. Mack, 945 S.W.2d 330, 331 (Tex. App.--Houston [1st Dist.] 1997, pet. dism'd w.o.j.,
mand. denied). 

C. Standard of Review

 A party seeking to compel arbitration must establish the existence of an arbitration agreement and show that the claims
raised fall within the scope of that agreement. In re Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 573 (Tex. 1999) (per
curiam); In re H.E. Butt Grocery Co., 17 S.W.3d 360, 366-67 (Tex. App.--Houston [14th Dist.] 2000, orig. proceeding).
When one party denies he is bound by an arbitration agreement, the trial court must summarily determine whether an
agreement to arbitrate exists between the parties. Tex. Civ. Prac. & Rem. Code Ann. § 171.021 (Vernon Supp.
2001);Southwest Tex. Pathology Assocs., L.L.P. v. Roosth, 27 S.W.3d 204, 207 (Tex. App.--San Antonio 2000, pet. filed);
ANCO Ins. Servs. of Houston, Inc. v. Romero, 27 S.W.3d 1, 3 (Tex. App.--San Antonio 2000, pet. denied). A court may
summarily decide whether to compel arbitration on the basis of affidavits, pleadings, discovery, and stipulations. Anglin,
842 S.W.2d at 269. However, if material facts necessary to determine the issue are controverted, the trial court must
conduct an evidentiary hearing to determine the material facts in dispute. Id. Once a party establishes a claim within the
scope of the arbitration agreement, the trial court must compel arbitration and stay its own proceedings unless the party
opposing arbitration meets its burden of presenting evidence that prevents enforcement. Oakwood, 987 S.W.2d at 573;
Cantella & Co., Inc. v. Goodwin, 924 S.W.2d 943, 944 (Tex. 1996) (per curiam). 

 We review a trial court's determination concerning the existence of an arbitration agreement under an abuse of discretion
standard. Roosth, 27 S.W.3d at 207; ANCO Ins. Servs., 27 S.W.3d at 3; Hardin Const. Group, Inc. v. Strictly Painting, Inc.,
945 S.W.2d 308, 312 (Tex. App.--San Antonio 1997, orig. proceeding [mand. denied]). Under this standard, we must
uphold the trial court's decision unless we conclude that the trial court could reasonably have reached only one
decision.Roosth, 27 S.W.3d at 207; Hardin, 945 S.W.2d at 312. Where, as here, the trial court does not enter findings of
facts and conclusions of law, we must affirm the trial court's decision if there is sufficient evidence to support it upon any
legal theory asserted. Pepe Internat'l Dev. Co. v. Garcia, 915 S.W.2d 925, 929 (Tex. App.--Houston [1st Dist.] 1996, no
writ). Even if we would have decided the issue differently, we cannot disturb the trial court's finding unless it is shown to
be arbitrary and unreasonable. Walker, 827 S.W.2d at 840. Legal conclusions, however, are reviewed de novo. Id; Pony
Express Courier Corp. v. Morris, 921 S.W.2d 817, 820 (Tex. App.--San Antonio 1996, no writ). Whether an agreement
imposes a duty on the parties to arbitrate a dispute is a matter of contract interpretation and a question of law for the court.
Tenet Healthcare Ltd. v. Cooper, 960 S.W.2d 386, 388 (Tex. App.--Houston [14th Dist.] 1998, writ dism'd w.o.j.); Kline v.
O'Quinn, 874 S.W.2d 776, 782 (Tex. App.--Houston [14th Dist.] 1994, writ denied). 

.

D. Is There a Binding Arbitration Agreement?

 Arbitration is a contractual proceeding by which the parties, in order to obtain a speedy and inexpensive final disposition
of disputed matters, consent to submit the controversy to arbitrators for determination. See Porter & Clements, L.L.P. v.
Stone, 935 S.W.2d 217, 221 (Tex. App.--Houston [1st Dist.] 1996, no pet.). Arbitration is a creature of contract and a
clause requiring arbitration is interpreted under contract principles. Tenet Healthcare, 960 S.W.2d at 388;Belmont
Constructors, Inc. v. Lyondell Petrochemical Co., 896 S.W.2d 352, 356-57 (Tex. App.--Houston [1st Dist.] 1995, no
writ);City of Alamo v. Garcia, 878 S.W.2d 664, 665 (Tex. App.--Corpus Christi 1994, no writ). The Federal Arbitration
Act and the Texas Arbitration Act both provide that a contract to submit to arbitration is valid and enforceable "save upon
such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2000); Tex. Civ. Prac. & Rem.
Code Ann. § 171.001 (Vernon Supp. 2001); Tenet Healthcare, 960 S.W.2d at 387-88. Arbitration agreements are subject
to the same defenses as any other contract. See Garcia, 878 S.W.2d at 665-66. 

 A party seeking to compel arbitration must first establish his right to that remedy under a contract. Garcia, 878 S.W.2d at
665. Texas law favors arbitration. Brazoria County v. Knutson, 142 Tex. 172, 176 S.W.2d 740, 743 (1943). Although
there is a presumption in favor of arbitration, a court may not order arbitration in the absence of a valid arbitration
agreement. Tenet Healthcare, 960 S.W.2d at 388; Belmont, 896 S.W.2d at 356-57. Whether an agreement imposes a duty
on the parties to arbitrate a dispute is a matter of contract interpretation and, thus, a question of law for the court. Tenet
Healthcare, 960 S.W.2d at 388; Kline, 874 S.W.2d at 782. The existence of a valid agreement is determined by the
substantive contract law of Texas. See Tenet Healthcare, 960 S.W.2d at 388. Under Texas law, parties enter into a binding
contract when the following elements exist: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer;
(3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the
intent that it be mutual and binding. Buxani v. Nussbaum, 940 S.W.2d 350, 352 (Tex. App.--San Antonio 1997, no
writ);McCulley Fine Arts Gallery, Inc. v. "X" Partners, 860 S.W.2d 473, 477 (Tex. App.--El Paso 1997, no writ).
Furthermore, consideration is a fundamental element of any valid contract. Copeland v. Alsobrook, 3 S.W.3d 598, 604
(Tex. App.--San Antonio 1999, pet. denied); Smith v. Renz, 840 S.W.2d 702, 702 (Tex. App.--Corpus Christi 1992, writ
denied). 

 In Tenet Healthcare, Cooper, a longtime employee, was given a new employee handbook, which said that the employer
would "assure access to binding arbitration procedures for solving disputes, if necessary," but that the handbook was not
intended to constitute a legal contract "because that can only occur with a written agreement executed [by certain company
executives]." Tenet Healthcare, 960 S.W.2d at 387. The last page of the handbook was an "acknowledgment form," which
included the following language: 

[A]ll AMI employees are employed on an "at-will" basis. 



* * * * *

 

No written agreement regarding employment will be honored unless approved in writing by Executive director and above. .
. . I understand AMI makes available arbitration for resolution of grievance. I also understand that as a condition of
employment and continued employment, I agree to submit any complaints to the published process and agree to abide by
and accept the final decision of the arbitration panel as ultimate resolution of my complaint(s) for any and all events that
arise out of employment or termination of employment. 

 

Id. Cooper signed the acknowledgment form. Id. She was later discharged, and sued Tenet Healthcare for wrongful
discharge. Id. The trial court denied the employer's motion to compel arbitration, without stating a reason. Id. In
affirming the trial court's decision, the First Court of Appeals held there was no enforceable contract between the parties
because, while the language of the handbook and acknowledgment purported to bind the employee, it explicitly did not
bind the company. Id. at 388. The court stated: 

The preface to the handbook has been quoted above. It explicitly states that the handbook was not intended to constitute a
legal contract "because that can only occur with a written agreement executed by a facility Executive director and an AMI
Senior Executive Officer." The evidence shows that no such written agreement was ever so executed. 



 The acknowledgment form has also been quoted above and the language explicitly states that nothing about the document
is binding on the employer, and the employer reserved the right to amend or rescind any provisions of the handbook "as it
deemed appropriate" within its sole discretion. It was further set out that Cooper was an "at will" employee and that as a
condition of continued employment, she agreed to submit any complaints concerning her employment to arbitration. 



Id.

 The court of appeals also cited the Texas Supreme Court's holding in Light v. Centel Cellular Co., 883 S.W.2d 642,
644-45 (Tex. 1994). Tenet Healthcare, 960 S.W.2d at 388. In Light, the supreme court held that consideration for a valid
contract between an employer and an at-will employee cannot depend on continued employment because such a promise is
illusory. The supreme court stated: 

Consideration for a promise, by either the employee or the employer in an at-will employment, cannot be dependent on a
period of continued employment. Such a promise would be illusory because it fails to bind the promisor who always
retains the option of discontinuing employment in lieu of performance. When illusory promises are all that support a
purported bilateral contract, there is no contract. 



Light, 883 S.W.2d at 644-45 (citation omitted). 

 The Tenet Healthcare court noted that under the doctrine of employment at-will, the company "could have fired Cooper
the very minute she signed the acknowledgment form." Tenet Healthcare, 960 S.W.2d at 389 n. 5. The court of appeals
then held the arbitration clause was unenforceable for two reasons: (1) because the employee was an at-will employee, there
was no contract between the parties (all that existed between the parties was the illusory promise of at-will employment);
and (2) the disclaimer language in the handbook and on the acknowledgment form expressly denied that the employer was
bound by the policies set out in the handbook. Id. at 388-89. We agree with the reasoning of the court of appeals in Tenet
Healthcare. 

 In the instant case, the "Alternative Dispute Resolution Policy--Employment Application Language" shows that appellee's
employment was at-will; that only Davidson's president could modify an employment agreement; and that Davidson
"reserve[d] the right to unilaterally abolish or modify any personnel policy without prior notice." Furthermore, just like
Cooper in Tenet Healthcare, appellee was compelled to sign the agreement after his employment had already begun. 

 We conclude that the alternative resolution dispute policy in this case is not binding on both parties. Although Davidson
agreed to submit "any and all claims, disputes or controversies" arising between it and appellee to arbitration, it explicitly
retained the absolute right to modify or terminate the policy at any time. 

 Further, we conclude that Davidson gave no consideration for the purported arbitration agreement. Appellee was already
working for Davidson when he signed the alternative resolution dispute policy, and the implied benefit of continued
employment is illusory for an at-will employee. 

 In its reply brief, Davidson cites In re Jebbia, 26 S.W.3d 753 (Tex. App.--Houston [14th Dist.] 2000, orig. proceeding),
and In re Alamo Lumber Co., 23 S.W.3d 577 (Tex. App.--San Antonio 2000, orig. proceeding), in support of its contention
that "mutual promises by an employer and employee giving up the right to litigate are sufficient consideration to support an
arbitration agreement." However, in both these cases, the language of the arbitration agreement showed that it was binding
upon both parties. See Jebbia, 26 S.W.2d at 758 ("The language of the arbitration agreement indicates it is binding upon
both parties."); Alamo Lumber, 23 S.W.2d at 579-80 ("Since the parties surrendered their rights to trial by jury, these
mutual promises supply valid consideration."). Because we have held in this case that the "Alternative Dispute Resolution
Policy--Employment Application Language" sought to bind only the employee, not the company, we conclude these cases
are not controlling. 

 We hold that Davidson failed to meet its burden of proof that a binding arbitration agreement exists. Accordingly, the trial
court did not err in denying Davidson's motion to compel arbitration. Appellant's sole issue is overruled. 

 The trial court's order denying Davidson's motion for compel arbitration is affirmed. Davidson's petition for a writ of
mandamus is denied. 





 FEDERICO G. HINOJOSA 

 Justice 





Dissenting Opinion by Justice Castillo. 



Publish. Tex. R. App. P. 47.3. 



Opinion delivered and filed this 

the 31st day of May, 2001. 

1. A court may summarily decide whether to compel arbitration on the basis of affidavits, pleadings, discovery, and
stipulations. Jack B. Anglin Co., Inc. v. Tipps, 842 S.W.2d 266, 269 (Tex. 1992). 

2. See Tex. Lab. Code Ann. § 451.001 (Vernon 1996) (an employer may not discharge an employee because the employee
has filed a workers' compensation claim in good faith).

3. Tex. Civ. Prac. & Rem. Code Ann. § 171.001 (Vernon Supp. 2001)

4. 9 U.S.C. § 2 (2000).



 








NUMBER 13-00-626-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI



_______________________________________________________________


J. M. DAVIDSON, INC. , Appellant,



v.





CHELSEY J. WEBSTER , Appellee.

_______________________________________________________________



On appeal from the 343rd District Court of San Patricio County, 

Texas and On Petition for Writ of Mandamus.



_______________________________________________________________



DISSENTING OPINION 

Before Justices Hinojosa, Yañez, and Castillo

Opinion by Justice Castillo



I concur with the majority's decision to deny Davidson's petition for writ of mandamus. However, with regard to the
majority's decision to affirm the trial court's order denying Davidson's motion to compel arbitration, I respectfully dissent. I
would hold that a valid arbitration agreement exists and the claim asserted falls within the scope of the agreement. 

JURISDICTION

Both the petition for writ of mandamus and the interlocutory appeal address the propriety of the trial court's denial of an at
will employer's motion to stay the trial court proceedings and compel arbitration. (1)

 To determine subject matter jurisdiction over and thus the proper disposition of the matter before us, we must first
determine whether the FAA or the TGAA applies. (2)

 

It is undisputed that Davidson seeks arbitration under both acts and that the arbitration agreement addressed both. Where
the parties designate in the arbitration agreement which arbitration statute they wish to have control, the court should apply
their choice. D. Wilson Constr. Co. v. Cris Equipment Co., 988 S.W.2d 388, 392 (Tex. App. - Corpus Christi 1999, orig.
proceeding). Here, the parties agreed to apply whichever act "shall have the broadest effect." For purposes of our subject
matter jurisdiction, however, jurisdiction cannot be conferred by the parties' agreement. Russ Berrie & Co. v. Gantt, 998
S.W.2d 713, 715 (Tex. App. - El Paso 1999, no. pet.). Accordingly, the agreement and record before us are first examined
under the federal act to see if there is evidence of a transaction affecting interstate commerce. (3)

 See In re Pamela Godt, 28 S.W.3d 732, 737 (Tex. App. - Corpus Christi 2000, orig. proceeding) (federal act will not be
applied if the contract does not relate to interstate commerce). 

The record before us is scant. The undisputed facts show that Webster resides in Aransas Pass, Texas and his former
employer J.M. Davidson, Inc., a corporation authorized to do business in the state of Texas, is located in Aransas Pass as
well. Webster was a heavy-equipment mechanic and was injured. These facts are insufficient to conclusively establish a
"transaction involving commerce." (4)

 Therefore, based on the record presented to this Court, I concur in the majority decision to deny mandamus relief under the
FAA. (5)

 Our jurisdiction therefore is premised on the provisions of the TGAA. Tex. Civ. Prac. & Rem. Code Ann.
§171.098(a)(1) (Vernon Supp. 2001). 

 Since no evidence other than the "Alternative Dispute Resolution Policy" in question was introduced at the hearing on the
motion to compel arbitration, there are no factual questions in dispute. The only issue before us, then, is the trial court's
legal interpretation of the arbitration provision. Accordingly, de novo review is appropriate. Nationwide of Bryan, Inc. v.
Dyer, 969 S.W.2d 518, 520 (Tex. App. - Austin 1998, no pet.). 

THE AGREEMENT TO ARBITRATE 



A party seeking to compel arbitration must make an "application" for a court order. Tex. Civ. Prac. & Rem. Code Ann. §§
171.021(a), 171.024(b) (Vernon Supp. 2001). Once a party requests arbitration and demonstrates that a written agreement
to arbitrate exists and the claims presented fall within the scope of that agreement, the trial court shall enter an order
requiring arbitration of those claims. Tex. Civ. Prac. & Rem. Code §171.021 (Vernon Supp. 2001); Capital Income Props.
v. Blackmon, 843 S.W.2d 22, 23-24 (Tex. 1992). The initial burden of establishing that a valid arbitration agreement exists
is on the party seeking arbitration. EZ Pawn Corp. v. Mancias, 934 S.W.2d 87, 91 (Tex. 1996). Once the existence of an
arbitration agreement has been established, a presumption attaches favoring arbitration. Cantella & Co. v. Goodwin, 924
S.W.2d 943, 944 (Tex. 1996);Prudential Sec. Inc. v. Marshall, 909 S.W.2d at 896, 898-99 (Tex. 1995) (orig.
proceeding);Dallas Cardiology Assoc., P.A. v. Mallick, 978 S.W.2d 209, 212 (Tex. App. - Texarkana 1998, pet. denied).
The burden then shifts to the opposing party to establish some ground for the revocation of the arbitration agreement. In re
Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 573 (Tex. 1999) (per curiam). Since the question of whether a valid
arbitration agreement exists is governed by substantive contract law, a reviewing court must determine whether both parties
willingly entered into a mutually binding contract for arbitration for which consideration was given. See Kline v. O'Quinn,
874 S.W.2d 776, 782 (Tex. App. - Houston [14th Dist.] 1994, writ denied). 

DISCUSSION

Davidson filed a verified copy of a written arbitration agreement which Webster signed. Central to this dissent is that the
document before us provides that the parties "mutually agree and contract that any and all claims, disputes or controversies
. . . including the arbitrability of any claim, dispute or controversy shall be exclusively and finally settled by binding
arbitration . . .". That the parties agreed to arbitrate the arbitrability of any claim, dispute or controversy presents the most
compelling reason to enforce the agreement. 

The current dispute entails Davidson's contention that the arbitration agreement is valid and Webster's contention that it is
not. (6)

 Neither party disputed the existence of the agreement to arbitrate, and neither party challenged consent to the agreement. (7)

 Davidson has made an initial showing that the parties agreed to arbitrate. The parties' agreement to submit the arbitrability
of any claim, dispute or controversy to arbitration supports a finding that the current dispute is within the scope of the
arbitration agreement.

Concluding that the agreement is illusory, however, the majority holds that Davidson did not meet its burden of proof to
show that a binding arbitration agreement exists absent consideration therefor and further holds that the agreement was not
binding on both parties. The majority's conclusions are addressed seriatim.

Consideration

The majority concludes that the agreement to arbitrate is illusory because Davidson provided no consideration. The
agreement expressly provides that the parties "mutually agree and contract" to submit their disputes to arbitration. The
agreement also expressly waives the parties' respective right to trial by jury. Both parties agreed to submit any claim,
dispute or controversy, including the arbitrability thereof, to arbitration and in return each relinquished trial by jury. Both
parties agreed and were, therefore, obligated to submit not only the arbitrability of their agreement but also the arbitrability
of Webster's retaliation claim to binding arbitration. 

The essence of arbitration is the agreement to submit a controversy to a third party. See Manes v. Dallas Baptist Coll., 638
S.W.2d 143, 145 (Tex. App. - Dallas 1982, writ ref'd n.r.e.). The purpose of arbitration is to avoid the formalities, delay
and expense of ordinary litigation. Ferguson v. Ferguson, 110 S.W.2d 1016, 1021 (Tex. App. - Eastland 1937, no writ).
Consideration is a fundamental element of every valid contract; it can consist of a benefit to the promisor or a loss or
detriment to the promisee. Smith v. Renz, 840 S.W.2d 702, 704 (Tex. App. - Corpus Christi 1992, writ denied). Where
there is an arbitration agreement, the benefit of the bargain is the right to avoid the expense and delay of litigation by
arbitrating. In re Jebbia, 26 S.W.3d 753, 756 (Tex. App. - Houston [14th Dist.] 2000, orig. proceeding). 

A written instrument reciting a consideration imports one. Warren v. Gentry, 21 Tex. Civ. App. 151, 50 S.W. 1025,
1025-26 (Tex. Civ. App. 1899, no writ). To offset this legal presumption of consideration, it was incumbent upon Webster
to present legally admissible evidence on the question of lack of consideration. He did not. Accordingly, the record before
us discloses that his employer and he agreed to a forum outside the courtroom to address their claims, disputes, and
controversies. By their agreement, both parties stood to benefit by the reduced cost and time to determine disputes, which is
the objective of arbitration. At the time they agreed to arbitrate, both parties gave up something of value to them - the right
to take the case directly to a jury trial. This mutual agreement provides sufficient consideration to support the arbitration
agreement. In re Jebbia, 26 S.W.3d at 756; In re Alamo Lumber Co., 23 S.W.3d 577, 579 (Tex. App. - San Antonio 2000,
orig. proceeding).

Davidson's right to modify or terminate personnel policies



The majority concludes that arbitration is not binding on both parties because Davidson retained the absolute right to
modify or terminate the agreement at any time. The agreement to arbitrate is contained in the same document that also
contains a paragraph addressing employment application policies. This second paragraph contains the statement that the
company "reserves the right to unilaterally abolish or modify any personnel policy without prior notice," upon which the
majority bases its holding. The second paragraph also contains language stating that "employment will be 'at-will'" and that
Davidson may terminate "employment at any time and for any reason." (8)



An agreement to arbitrate contained in a written contract is separable from the entire contract and is valid and enforceable
in spite of any attack made upon the contract as a whole. Pepe Int'l Dev. Co. v. Pub. Brewing, 915 S.W.2d 925, 932 (Tex.
App. - Houston [1st Dist.] 1996, no writ). That the employer has the right to unilaterally terminate or modify personnel
policies does not negate the employee's right to compel arbitration of "any claim, dispute or controversy" in conjunction
with his employment. Id.; Henry v. Gonzalez, 18 S.W.3d 684, 690 (Tex. App. - San Antonio 2000, pet. dism'd). In the
event the employer exercised that right, the employee retained the right to force arbitration on the issue. At all times,
Webster retained the right to compel arbitration of any claim, dispute or controversy. Nothing in the document before us
limits the ability of either the employer or the employee to terminate employment at will. 

The majority concludes that the opinions in In re Jebbia and In re Alamo Lumber Co., upon which Davidson relies, are not
controlling. The majority acknowledges that in both cases the language of the arbitration agreement was held to bind both
parties and that mutual promises to arbitrate supplied valid consideration. Relying upon Tenet Healthcare Ltd. v. Cooper,
960 S.W.2d 386 (Tex. App. - Houston [14th Dist.] 1998, writ dism'd w.o.j.), the majority concludes that the agreement here
sought to bind only the employee. Tenet, however, is distinguishable. There, neither the employee handbook nor the
acknowledgment form contained language binding the employer. The language merely established the existence of a
conditional agreement to arbitrate. See Shearson Lehman Hutton, Inc. v. Tucker, 806 S.W.2d 914, 920 (Tex. App. - Corpus
Christi 1991, writ dism'd w.o.j.). The Fourteenth Court of Appeals, which decided Tenet, has also now held that mutual
promises to give up the right to litigate can constitute the consideration supporting the agreement to arbitrate. Jebbia, 26
S.W.3d at 758. The court has also held that, where the language of the arbitration agreement indicates that it is binding on
both parties, the argument that no contract was formed is without merit. Id.

In the present case, the arbitration agreement reads that the parties "mutually agree and contract" to arbitrate. (9)

 An objective review of the record before us shows that the parties in this case were mutually obligated at the time they
executed the arbitration agreement. Davidson promised to relinquish litigation in favor of arbitration and Webster
promised the same. These mutual promises provided the consideration necessary to fulfill the mutuality of obligation
requirement, and a valid agreement to arbitrate was formed between the parties. 

Webster's arguments

Because Davidson established a valid arbitration agreement, Webster had the burden to show that the claim fell outside the
agreement. Prudential Sec. Inc., 909 S.W.2d at 900; D. Wilson Constr. Co., 988 S.W.2d at 394. Although he did not deny
the existence of the agreement to arbitrate, Webster refused to arbitrate and thereby invoked the trial court's jurisdiction to
hear the motion to compel. Tex. Civ. Prac. & Rem. Code Ann. §171.021(a)(Vernon Supp. 2001). None of his arguments
to the trial court addressed or met his burden to show that the claim fell outside the agreement. None mandated revocation
of the arbitration agreement.

Nothing in the record in this case establishes that the arbitration agreement was pled as an affirmative defense, and Webster
presented no authority holding that the arbitration agreement should not be enforced because it is an affirmative defense
unavailable under the Texas Labor Code as he maintained. Webster adduced neither evidence nor relevant precedent to
show that the agreement is unconscionable as claimed. Tex. Civ. Prac. & Rem. Code Ann. §171.022 (Vernon Supp.
2001);Emerald Tex. v. Peel, 920 S.W.2d 398, 401 (Tex. App. - Houston 1991, no writ.) (an arbitration agreement is invalid
if unconscionable); American Employers' Ins. Co. v. Aiken, 942 S.W.2d 156, 160 (Tex. App. - Fort Worth 1997, no writ)
(there is nothing unconscionable per se about an arbitration contract and the party claiming unconscionability has the
burden to prove it). Webster's argument that the contract is illusory and lacks mutuality has been addressed. His argument
regarding the absence of interstate commerce addressed only the applicability of the FAA. Webster did not address the
applicability of the TGAA below. (10)

 Finally, Webster's contention that arbitration violates public policy is unavailing. "The public policy of both our state and
federal governments favors agreements to resolve legal disputes through such voluntary settlement procedures." Anglin,
842 S.W.2d at 268; see Cantella & Co., 924 S.W.2d at 944. 





CONCLUSION

I would hold that Davidson established a valid arbitration agreement under the TGAA and that Webster has neither
overcome the strong presumption favoring arbitration under the TGAA nor established grounds for revocation of the
agreement. Prudential Sec. Inc., 909 S.W.2d at 900; D. Wilson Constr. Co., 988 S.W.2d at 394. Accordingly, I would
find that the trial court erred by denying Davidson's motion to compel arbitration and to stay proceedings. I would deny the
petition for writ of mandamus and reverse the trial court's order with instructions that the trial court (1) order arbitration of
Webster's claims against Davidson, and (2) stay Webster's civil action pending arbitration in accordance with their
agreement.

 

ERRLINDA CASTILLO

Justice 


Publish. Tex. R. App. P. 47.3.

Opinion delivered and filed this 

the 31st day of May, 2001.

1. As the majority notes, since the arbitration agreement addresses both the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2
(2000), and the Texas General Arbitration Act ("TGAA"), Tex. Civ. Prac. & Rem. Code Ann. § 171.098(a) (Vernon Supp.
2001) and the two were urged below, the party seeking to compel arbitration under both statutes must pursue parallel
proceedings. EZ Pawn Corp. v. Mancias, 934 S.W.2d 87, 87 (Tex. 1996); Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266,
272 (Tex. 1992).

2. The FAA was a response to hostility of American courts to the enforcement of arbitration agreements. Circuit City
Stores, Inc. v. Adams, ____ U.S. ____, 121 S.Ct. 1302, 1307 (2001).

3. The federal act applies to all suits in state and federal court when the dispute concerns a "contract evidencing a
transaction involving commerce" and its application is not limited solely to interstate shipment of goods. Anglin, 842
S.W.2d at 269. The creation of an employment relationship which involves commerce is sufficient. White-Weld & Co. v.
Mosser, 587 S.W.2d 485, 487 (Tex.Civ.App.-Dallas 1979, writ ref'd n.r.e.). The term "involving commerce" thus is
interpreted broadly and is the functional equivalent of "affecting commerce," signaling the intent of Congress to exercise its
Commerce Clause to the fullest extent. In re L&L Kempwood Assoc., L.P. 9 S.W.3d 125, 126-27 (Tex. 1999). 

4. A party who alleges interstate commerce may show it in a variety of ways: location of headquarters in another state;
transportation of materials across state lines; manufacture of parts in a different state; billings prepared out of state;
interstate mail and phone calls in support of a contract. In re Profanchik, 31 S.W.3d 381, 385 (Tex.App.-Corpus Christi
2000, orig. proceeding).

5. In light of the record in this case, I would also deny mandamus relief because Davidson has an adequate remedy by
interlocutory appeal. Anglin, 842 S.W.2d at 272. To be entitled to the remedy of mandamus, a relator must meet both
requirements of a two-prong test. Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex. 1992). The relator must show that (1)
the trial court clearly abused its discretion, and (2) the relator has no adequate remedy by appeal. Id. This Court has no
power to grant mandamus relief absent these conditions. Johnson v. Fourth Ct. App., 700 S.W.2d 916, 917 (Tex. 1985)
(orig. proceeding). 

6. The record is considered as it appeared before the trial court at the time of its ruling on the motion to compel
arbitration.In re Profanchik, 31 S.W.3d at 386. Before the trial court, Webster urged that arbitration should not be ordered
because arbitration is an affirmative defense unavailable under the Texas Labor Code, the contract is illusory, neither the
agreement nor the dispute involves "interstate commerce," and the contract violates public policy. 

7. As Webster signed the separate arbitration agreement and does not contest his consent to the agreement, we do not reach
the question of whether his continued employment implied consent under Hathaway v. Gen. Mills, Inc., 711 S.W.2d 227
(Tex. 1986). Cf. In re Jebbia, 26 S.W.3d 753, 758 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding) (arbitration
agreement stated it was accepted as a condition of employment); Tenet Healthcare Ltd. v. Cooper, 960 S.W.2d 386, 387
(Tex.App.-Houston [14th Dist.] 1998, writ dism'd w.o.j.) (agreement to arbitrate was made a condition of employment and
contained in employee handbook); and In re Alamo Lumber, 23 S.W.3d 577, 578-80 (Tex.App.-San Antonio 2000, orig
proceeding) (employee signed "Employee Acknowledgment" that arbitration was required as a condition of continued
employment).

8. Texas is an employment at will state, and, subject to exceptions not relevant in this case, employment is terminable at
any time by either party, with or without cause, absent an express agreement to the contrary. Fed. Express Corp. v.
Dutschmann, 846 S.W.2d 282, 283 (Tex. 1993); Schroeder v. Texas Iron Works, Inc., 813 S.W.2d 483, 489 (Tex. 1991).
The fact that Webster was an at will employee, however, does not affect the legitimacy of the contract to arbitrate. Light v.
Centel Cellular Co. of Tex.,883 S.W.2d 642, 644 (Tex. 1994) ("...at will employment does not preclude the formation of
other contracts between an employer and employee. At will employees may contract with their employers on any matter
except those which would limit the ability of either employer or employee to terminate the employment at will."(Emphasis
in original.))

9. Mutuality of obligation is a requisite in the formation of a contract. Tex. Gas Util. Co. v. Barrett, 460 S.W.2d 409, 412
(Tex. 1970). The parties must communicate their mutual assent to each other. Garcia v. Villarreal, 478 S.W.2d 830, 832
(Tex.Civ.App. - Corpus Christi 1971, no writ).

10. In the arbitration agreement, Webster and Davidson agreed to arbitrate the arbitrability of any claim, dispute or
controversy under the FAA or the state statute, "whichever shall have the broadest effect." Under the agreement in this
case, then, the question of the applicable statute was properly one for the arbitrator. See generally John Wiley & Sons, Inc.
v. Livingston, 376 U.S. 543, 557 (1964).


 








NUMBER 13-00-626-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI



_______________________________________________________________


J. M. DAVIDSON, INC. , Appellant,



v.





CHELSEY J. WEBSTER , Appellee.

_______________________________________________________________



On appeal from the 343rd District Court of San Patricio County, 

Texas and On Petition for Writ of Mandamus.



_______________________________________________________________



DISSENTING OPINION 

Before Justices Hinojosa, Yañez, and Castillo

Opinion by Justice Castillo



I concur with the majority's decision to deny Davidson's petition for writ of mandamus. However, with regard to the
majority's decision to affirm the trial court's order denying Davidson's motion to compel arbitration, I respectfully dissent. I
would hold that a valid arbitration agreement exists and the claim asserted falls within the scope of the agreement. 

JURISDICTION

Both the petition for writ of mandamus and the interlocutory appeal address the propriety of the trial court's denial of an at
will employer's motion to stay the trial court proceedings and compel arbitration. (1)

 To determine subject matter jurisdiction over and thus the proper disposition of the matter before us, we must first
determine whether the FAA or the TGAA applies. (2)

 

It is undisputed that Davidson seeks arbitration under both acts and that the arbitration agreement addressed both. Where
the parties designate in the arbitration agreement which arbitration statute they wish to have control, the court should apply
their choice. D. Wilson Constr. Co. v. Cris Equipment Co., 988 S.W.2d 388, 392 (Tex. App. - Corpus Christi 1999, orig.
proceeding). Here, the parties agreed to apply whichever act "shall have the broadest effect." For purposes of our subject
matter jurisdiction, however, jurisdiction cannot be conferred by the parties' agreement. Russ Berrie & Co. v. Gantt, 998
S.W.2d 713, 715 (Tex. App. - El Paso 1999, no. pet.). Accordingly, the agreement and record before us are first examined
under the federal act to see if there is evidence of a transaction affecting interstate commerce. (3)

 See In re Pamela Godt, 28 S.W.3d 732, 737 (Tex. App. - Corpus Christi 2000, orig. proceeding) (federal act will not be
applied if the contract does not relate to interstate commerce). 

The record before us is scant. The undisputed facts show that Webster resides in Aransas Pass, Texas and his former
employer J.M. Davidson, Inc., a corporation authorized to do business in the state of Texas, is located in Aransas Pass as
well. Webster was a heavy-equipment mechanic and was injured. These facts are insufficient to conclusively establish a
"transaction involving commerce." (4)

 Therefore, based on the record presented to this Court, I concur in the majority decision to deny mandamus relief under the
FAA. (5)

 Our jurisdiction therefore is premised on the provisions of the TGAA. Tex. Civ. Prac. & Rem. Code Ann.
§171.098(a)(1) (Vernon Supp. 2001). 

 Since no evidence other than the "Alternative Dispute Resolution Policy" in question was introduced at the hearing on the
motion to compel arbitration, there are no factual questions in dispute. The only issue before us, then, is the trial court's
legal interpretation of the arbitration provision. Accordingly, de novo review is appropriate. Nationwide of Bryan, Inc. v.
Dyer, 969 S.W.2d 518, 520 (Tex. App. - Austin 1998, no pet.). 

THE AGREEMENT TO ARBITRATE 



A party seeking to compel arbitration must make an "application" for a court order. Tex. Civ. Prac. & Rem. Code Ann. §§
171.021(a), 171.024(b) (Vernon Supp. 2001). Once a party requests arbitration and demonstrates that a written agreement
to arbitrate exists and the claims presented fall within the scope of that agreement, the trial court shall enter an order
requiring arbitration of those claims. Tex. Civ. Prac. & Rem. Code §171.021 (Vernon Supp. 2001); Capital Income Props.
v. Blackmon, 843 S.W.2d 22, 23-24 (Tex. 1992). The initial burden of establishing that a valid arbitration agreement exists
is on the party seeking arbitration. EZ Pawn Corp. v. Mancias, 934 S.W.2d 87, 91 (Tex. 1996). Once the existence of an
arbitration agreement has been established, a presumption attaches favoring arbitration. Cantella & Co. v. Goodwin, 924
S.W.2d 943, 944 (Tex. 1996);Prudential Sec. Inc. v. Marshall, 909 S.W.2d at 896, 898-99 (Tex. 1995) (orig.
proceeding);Dallas Cardiology Assoc., P.A. v. Mallick, 978 S.W.2d 209, 212 (Tex. App. - Texarkana 1998, pet. denied). 
The burden then shifts to the opposing party to establish some ground for the revocation of the arbitration agreement. In re
Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 573 (Tex. 1999) (per curiam). Since the question of whether a valid
arbitration agreement exists is governed by substantive contract law, a reviewing court must determine whether both parties
willingly entered into a mutually binding contract for arbitration for which consideration was given. See Kline v. O'Quinn,
874 S.W.2d 776, 782 (Tex. App. - Houston [14th Dist.] 1994, writ denied). 

DISCUSSION

Davidson filed a verified copy of a written arbitration agreement which Webster signed. Central to this dissent is that the
document before us provides that the parties "mutually agree and contract that any and all claims, disputes or controversies
. . . including the arbitrability of any claim, dispute or controversy shall be exclusively and finally settled by binding
arbitration . . .". That the parties agreed to arbitrate the arbitrability of any claim, dispute or controversy presents the most
compelling reason to enforce the agreement. 

The current dispute entails Davidson's contention that the arbitration agreement is valid and Webster's contention that it is
not. (6)

 Neither party disputed the existence of the agreement to arbitrate, and neither party challenged consent to the agreement. (7)

 Davidson has made an initial showing that the parties agreed to arbitrate. The parties' agreement to submit the arbitrability
of any claim, dispute or controversy to arbitration supports a finding that the current dispute is within the scope of the
arbitration agreement.

Concluding that the agreement is illusory, however, the majority holds that Davidson did not meet its burden of proof to
show that a binding arbitration agreement exists absent consideration therefor and further holds that the agreement was not
binding on both parties. The majority's conclusions are addressed seriatim.

Consideration

The majority concludes that the agreement to arbitrate is illusory because Davidson provided no consideration. The
agreement expressly provides that the parties "mutually agree and contract" to submit their disputes to arbitration. The
agreement also expressly waives the parties' respective right to trial by jury. Both parties agreed to submit any claim,
dispute or controversy, including the arbitrability thereof, to arbitration and in return each relinquished trial by jury. Both
parties agreed and were, therefore, obligated to submit not only the arbitrability of their agreement but also the arbitrability
of Webster's retaliation claim to binding arbitration. 

The essence of arbitration is the agreement to submit a controversy to a third party. See Manes v. Dallas Baptist Coll., 638
S.W.2d 143, 145 (Tex. App. - Dallas 1982, writ ref'd n.r.e.). The purpose of arbitration is to avoid the formalities, delay
and expense of ordinary litigation. Ferguson v. Ferguson, 110 S.W.2d 1016, 1021 (Tex. App. - Eastland 1937, no writ).
Consideration is a fundamental element of every valid contract; it can consist of a benefit to the promisor or a loss or
detriment to the promisee. Smith v. Renz, 840 S.W.2d 702, 704 (Tex. App. - Corpus Christi 1992, writ denied). Where
there is an arbitration agreement, the benefit of the bargain is the right to avoid the expense and delay of litigation by
arbitrating. In re Jebbia, 26 S.W.3d 753, 756 (Tex. App. - Houston [14th Dist.] 2000, orig. proceeding). 

A written instrument reciting a consideration imports one. Warren v. Gentry, 21 Tex. Civ. App. 151, 50 S.W. 1025,
1025-26 (Tex. Civ. App. 1899, no writ). To offset this legal presumption of consideration, it was incumbent upon Webster
to present legally admissible evidence on the question of lack of consideration. He did not. Accordingly, the record before
us discloses that his employer and he agreed to a forum outside the courtroom to address their claims, disputes, and
controversies. By their agreement, both parties stood to benefit by the reduced cost and time to determine disputes, which is
the objective of arbitration. At the time they agreed to arbitrate, both parties gave up something of value to them - the right
to take the case directly to a jury trial. This mutual agreement provides sufficient consideration to support the arbitration
agreement. In re Jebbia, 26 S.W.3d at 756; In re Alamo Lumber Co., 23 S.W.3d 577, 579 (Tex. App. - San Antonio 2000,
orig. proceeding).

Davidson's right to modify or terminate personnel policies



The majority concludes that arbitration is not binding on both parties because Davidson retained the absolute right to
modify or terminate the agreement at any time. The agreement to arbitrate is contained in the same document that also
contains a paragraph addressing employment application policies. This second paragraph contains the statement that the
company "reserves the right to unilaterally abolish or modify any personnel policy without prior notice," upon which the
majority bases its holding. The second paragraph also contains language stating that "employment will be 'at-will'" and that
Davidson may terminate "employment at any time and for any reason." (8)



An agreement to arbitrate contained in a written contract is separable from the entire contract and is valid and enforceable
in spite of any attack made upon the contract as a whole. Pepe Int'l Dev. Co. v. Pub. Brewing, 915 S.W.2d 925, 932 (Tex.
App. - Houston [1st Dist.] 1996, no writ). That the employer has the right to unilaterally terminate or modify personnel
policies does not negate the employee's right to compel arbitration of "any claim, dispute or controversy" in conjunction
with his employment. Id.; Henry v. Gonzalez, 18 S.W.3d 684, 690 (Tex. App. - San Antonio 2000, pet. dism'd). In the
event the employer exercised that right, the employee retained the right to force arbitration on the issue. At all times,
Webster retained the right to compel arbitration of any claim, dispute or controversy. Nothing in the document before us
limits the ability of either the employer or the employee to terminate employment at will. 

The majority concludes that the opinions in In re Jebbia and In re Alamo Lumber Co., upon which Davidson relies, are not
controlling. The majority acknowledges that in both cases the language of the arbitration agreement was held to bind both
parties and that mutual promises to arbitrate supplied valid consideration. Relying upon Tenet Healthcare Ltd. v. Cooper,
960 S.W.2d 386 (Tex. App. - Houston [14th Dist.] 1998, writ dism'd w.o.j.), the majority concludes that the agreement here
sought to bind only the employee. Tenet, however, is distinguishable. There, neither the employee handbook nor the
acknowledgment form contained language binding the employer. The language merely established the existence of a
conditional agreement to arbitrate. See Shearson Lehman Hutton, Inc. v. Tucker, 806 S.W.2d 914, 920 (Tex. App. - Corpus
Christi 1991, writ dism'd w.o.j.). The Fourteenth Court of Appeals, which decided Tenet, has also now held that mutual
promises to give up the right to litigate can constitute the consideration supporting the agreement to arbitrate. Jebbia, 26
S.W.3d at 758. The court has also held that, where the language of the arbitration agreement indicates that it is binding on
both parties, the argument that no contract was formed is without merit. Id.

In the present case, the arbitration agreement reads that the parties "mutually agree and contract" to arbitrate. (9)

 An objective review of the record before us shows that the parties in this case were mutually obligated at the time they
executed the arbitration agreement. Davidson promised to relinquish litigation in favor of arbitration and Webster
promised the same. These mutual promises provided the consideration necessary to fulfill the mutuality of obligation
requirement, and a valid agreement to arbitrate was formed between the parties. 

Webster's arguments

Because Davidson established a valid arbitration agreement, Webster had the burden to show that the claim fell outside the
agreement. Prudential Sec. Inc., 909 S.W.2d at 900; D. Wilson Constr. Co., 988 S.W.2d at 394. Although he did not deny
the existence of the agreement to arbitrate, Webster refused to arbitrate and thereby invoked the trial court's jurisdiction to
hear the motion to compel. Tex. Civ. Prac. & Rem. Code Ann. §171.021(a)(Vernon Supp. 2001). None of his arguments
to the trial court addressed or met his burden to show that the claim fell outside the agreement. None mandated revocation
of the arbitration agreement.

Nothing in the record in this case establishes that the arbitration agreement was pled as an affirmative defense, and Webster
presented no authority holding that the arbitration agreement should not be enforced because it is an affirmative defense
unavailable under the Texas Labor Code as he maintained. Webster adduced neither evidence nor relevant precedent to
show that the agreement is unconscionable as claimed. Tex. Civ. Prac. & Rem. Code Ann. §171.022 (Vernon Supp.
2001);Emerald Tex. v. Peel, 920 S.W.2d 398, 401 (Tex. App. - Houston 1991, no writ.) (an arbitration agreement is invalid
if unconscionable); American Employers' Ins. Co. v. Aiken, 942 S.W.2d 156, 160 (Tex. App. - Fort Worth 1997, no writ)
(there is nothing unconscionable per se about an arbitration contract and the party claiming unconscionability has the
burden to prove it). Webster's argument that the contract is illusory and lacks mutuality has been addressed. His argument
regarding the absence of interstate commerce addressed only the applicability of the FAA. Webster did not address the
applicability of the TGAA below. (10)

 Finally, Webster's contention that arbitration violates public policy is unavailing. "The public policy of both our state and
federal governments favors agreements to resolve legal disputes through such voluntary settlement procedures." Anglin,
842 S.W.2d at 268; see Cantella & Co., 924 S.W.2d at 944. 





CONCLUSION

I would hold that Davidson established a valid arbitration agreement under the TGAA and that Webster has neither
overcome the strong presumption favoring arbitration under the TGAA nor established grounds for revocation of the
agreement. Prudential Sec. Inc., 909 S.W.2d at 900; D. Wilson Constr. Co., 988 S.W.2d at 394. Accordingly, I would
find that the trial court erred by denying Davidson's motion to compel arbitration and to stay proceedings. I would deny the
petition for writ of mandamus and reverse the trial court's order with instructions that the trial court (1) order arbitration of
Webster's claims against Davidson, and (2) stay Webster's civil action pending arbitration in accordance with their
agreement.

 

ERRLINDA CASTILLO

Justice 


Publish. Tex. R. App. P. 47.3.

Opinion delivered and filed this 

the 31st day of May, 2001.

1. As the majority notes, since the arbitration agreement addresses both the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2
(2000), and the Texas General Arbitration Act ("TGAA"), Tex. Civ. Prac. & Rem. Code Ann. § 171.098(a) (Vernon Supp.
2001) and the two were urged below, the party seeking to compel arbitration under both statutes must pursue parallel
proceedings. EZ Pawn Corp. v. Mancias, 934 S.W.2d 87, 87 (Tex. 1996); Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266,
272 (Tex. 1992).

2. The FAA was a response to hostility of American courts to the enforcement of arbitration agreements. Circuit City
Stores, Inc. v. Adams, ____ U.S. ____, 121 S.Ct. 1302, 1307 (2001).

3. The federal act applies to all suits in state and federal court when the dispute concerns a "contract evidencing a
transaction involving commerce" and its application is not limited solely to interstate shipment of goods. Anglin, 842
S.W.2d at 269. The creation of an employment relationship which involves commerce is sufficient. White-Weld & Co. v.
Mosser, 587 S.W.2d 485, 487 (Tex.Civ.App.-Dallas 1979, writ ref'd n.r.e.). The term "involving commerce" thus is
interpreted broadly and is the functional equivalent of "affecting commerce," signaling the intent of Congress to exercise its
Commerce Clause to the fullest extent. In re L&L Kempwood Assoc., L.P. 9 S.W.3d 125, 126-27 (Tex. 1999). 

4. A party who alleges interstate commerce may show it in a variety of ways: location of headquarters in another state;
transportation of materials across state lines; manufacture of parts in a different state; billings prepared out of state;
interstate mail and phone calls in support of a contract. In re Profanchik, 31 S.W.3d 381, 385 (Tex.App.-Corpus Christi
2000, orig. proceeding).

5. In light of the record in this case, I would also deny mandamus relief because Davidson has an adequate remedy by
interlocutory appeal. Anglin, 842 S.W.2d at 272. To be entitled to the remedy of mandamus, a relator must meet both
requirements of a two-prong test. Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex. 1992). The relator must show that (1)
the trial court clearly abused its discretion, and (2) the relator has no adequate remedy by appeal. Id. This Court has no
power to grant mandamus relief absent these conditions. Johnson v. Fourth Ct. App., 700 S.W.2d 916, 917 (Tex. 1985)
(orig. proceeding). 

6. The record is considered as it appeared before the trial court at the time of its ruling on the motion to compel arbitration.
In re Profanchik, 31 S.W.3d at 386. Before the trial court, Webster urged that arbitration should not be ordered because
arbitration is an affirmative defense unavailable under the Texas Labor Code, the contract is illusory, neither the agreement
nor the dispute involves "interstate commerce," and the contract violates public policy. 

7. As Webster signed the separate arbitration agreement and does not contest his consent to the agreement, we do not reach
the question of whether his continued employment implied consent underHathaway v. Gen. Mills, Inc., 711 S.W.2d 227
(Tex. 1986). Cf. In re Jebbia, 26 S.W.3d 753, 758 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding) (arbitration
agreement stated it was accepted as a condition of employment); Tenet Healthcare Ltd. v. Cooper, 960 S.W.2d 386, 387
(Tex.App.-Houston [14th Dist.] 1998, writ dism'd w.o.j.) (agreement to arbitrate was made a condition of employment and
contained in employee handbook); and In re Alamo Lumber, 23 S.W.3d 577, 578-80 (Tex.App.-San Antonio 2000, orig
proceeding) (employee signed "Employee Acknowledgment" that arbitration was required as a condition of continued
employment).

8. Texas is an employment at will state, and, subject to exceptions not relevant in this case, employment is terminable at
any time by either party, with or without cause, absent an express agreement to the contrary. Fed. Express Corp. v.
Dutschmann, 846 S.W.2d 282, 283 (Tex. 1993); Schroeder v. Texas Iron Works, Inc., 813 S.W.2d 483, 489 (Tex. 1991).
The fact that Webster was an at will employee, however, does not affect the legitimacy of the contract to arbitrate. Light v.
Centel Cellular Co. of Tex.,883 S.W.2d 642, 644 (Tex. 1994) ("...at will employment does not preclude the formation of
other contracts between an employer and employee. At will employees may contract with their employers on any matter
except those which would limit the ability of either employer or employee to terminate the employment at will."(Emphasis
in original.))

9. Mutuality of obligation is a requisite in the formation of a contract. Tex. Gas Util. Co. v. Barrett, 460 S.W.2d 409, 412
(Tex. 1970). The parties must communicate their mutual assent to each other. Garcia v. Villarreal, 478 S.W.2d 830, 832
(Tex.Civ.App. - Corpus Christi 1971, no writ).

10. In the arbitration agreement, Webster and Davidson agreed to arbitrate the arbitrability of any claim, dispute or
controversy under the FAA or the state statute, "whichever shall have the broadest effect." Under the agreement in this
case, then, the question of the applicable statute was properly one for the arbitrator. See generally John Wiley & Sons, Inc.
v. Livingston, 376 U.S. 543, 557 (1964).