In re ALAMO LUMBER COMPANY,
A Wholly Owned Subsidiary of
Vaughan & Sons, Inc.

No. 04–00–00108–CV.

Court of Appeals of Texas,
San Antonio.

June 21, 2000.

E. Burke Huber, Jr., Larry E. Gee, Jeffery S. Darby, Cox & Smith Inc., San Antonio, for Appellant.

Edward C. Snyder, Jesse R. Castillo, Martin, Drought & Torres, Inc., San Antonio, for Appellee.

Before RICKHOFF, STONE, and DUNCAN, Justices.

## OPINION

TOM RICKHOFF, Justice.

Alamo Lumber Company, a wholly owned subsidiary of Vaughan & Sons, Inc. (Alamo), seeks a writ of mandamus ordering the Honorable George M. Thurmond to compel arbitration of claims brought against Alamo by five of its former employees (the Employees).[1] The central issue we must resolve is whether the parties' arbitration agreement is supported by consideration.

### FACTUAL AND PROCEDURAL BACKGROUND

Effective June 1, 1997, Alamo instituted an "Open Door Policy for Dispute Resolution" (the Policy), which required arbitration of all disputes arising out of employment with Alamo, including tort claims, whether asserted during the employment relationship or after the termination of the relationship. As a condition of continued employment, Alamo required all personnel to sign an "Employee Acknowledgment" stating that they had received a copy of the Policy and understood that the Policy constituted the exclusive means of resolving disputes covered by the Policy. Four of the Employees were employees of Alamo when the Policy went into effect. They

---

1. The former employees are Carlos Muñoz, Rodolfo Arreola, David Snelling, David Vas- quez, and Javier Vasquez.

all signed an Employee Acknowledgment. The remaining Employee became an employee after the Policy went into effect. He too signed an Employee Acknowledgment.

The Employees resigned during an investigation of inventory shortages. Thereafter, they sued Alamo for false light publicity, libel, slander, and tortious interference with business relations. These claims arose from statements made by management personnel during the investigation. Alamo filed a motion to compel arbitration, which the trial court denied.

### DISCUSSION

■ A writ of mandamus will issue when a trial judge erroneously denies a motion to compel arbitration under the Federal Arbitration Act (FAA). *See In re Valero Energy Corp.*, 968 S.W.2d 916, 916 (Tex.1998). The FAA applies when a contract relates to interstate commerce. *See Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269–70 (Tex.1992); *Stewart Title Guar. Co. v. Mack*, 945 S.W.2d 330, 333 (Tex.App.—Houston [1st Dist.] 1997, writ dism'd w.o.j.). In this case, the Policy expressly invokes the FAA and states that the parties recognize the work of the Employees involves interstate commerce. We now turn to consider whether the trial judge erred in refusing to compel arbitration.

■ The Employees argue that the Policy is not binding on them because it is not supported by consideration. To decide whether parties have entered into a binding arbitration agreement under the FAA, we apply state-law principles governing contract formation. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

■ In Texas, the surrender of a legal right constitutes valid consideration. *See Northern Natural Gas Co. v. Conoco, Inc.*, 986 S.W.2d 603, 607 (Tex.1998). Alamo argues that the parties' mutual prom-ises to arbitrate constitute valid consideration because the parties surrendered their legal rights to a jury trial. The Employees counter that the Policy does not contain mutual promises to arbitrate because it does not require Alamo to arbitrate claims it may have against them.

The Employees point out that the procedure for initiating arbitration under the Policy is directed toward employees; there is no stated procedure for Alamo to initiate arbitration. Also, the Policy imposes a 180–day limitations period for all employee claims, but does not impose any limitations period for claims by Alamo. The Employees argue that these provisions indicate the Policy does not require Alamo to arbitrate its claims. We believe, however, that other provisions of the Policy establish that Alamo's claims are covered.

The Policy states that the arbitrator's award is "final and binding" and that "binding and final arbitration [is] the sole method for resolving employment disputes." This language indicates that the Policy covers claims asserted by Alamo, as well as claims asserted by employees. Under the heading "What is Covered by the Open Door Policy for Dispute Resolution?" the Policy states that it covers "[b]asically ... all disputes arising out of your employment...." Again, this language indicates that the Policy covers claims asserted by Alamo. The Policy then states, "Claims which are *not* covered ... and which must be pursued in their appropriate forums are ... claims by the Company ... for injunctive or equitable relief...." If Alamo did not intend to subject any of its claims to arbitration, it would have been unnecessary to include this language exempting claims for injunctive or equitable relief. Accordingly, we conclude that both the Employees and Alamo promised to arbitrate their claims. Since the parties surrendered their rights to trial by jury, these mutual promises supply valid consideration.[2]

2. We also note that some courts have held     that an employer's promise to be bound by

Alamo argues that the Policy is also binding on the plaintiffs pursuant to *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227 (Tex.1986). In *Hathaway*, the dispute centered on whether an employer and employee agreed to modify their employment-at-will contract to provide that the employee would be entitled to a lower commission rate. The court first noted that although parties have the power to modify their contracts, a modification must satisfy the elements of a contract, namely, a meeting of the minds supported by consideration. *See Hathaway*, 711 S.W.2d at 228. The court then set out the following rules applicable to employment-at-will situations:

> In employment at will situations, either party may impose modifications to the employment terms as a condition of continued employment. The party asserting the modification still must prove that the other party agreed to modify the employment terms. Generally, when the employer notifies an employee of changes in employment terms, the employee must accept the new terms or quit. If the employee continues working with knowledge of the changes, he has accepted the changes as a matter of law. Thus, to prove a modification of an at will employment contract, the party asserting the modification must prove two things: (1) notice of the change; and, (2) acceptance of the change.

*Id.* at 229 (citations omitted).

The Employees argue that *Hathaway* only applies to modifications of basic employment terms, such as compensation and at-will status. We find nothing in *Hathaway* to support this distinction, nor are we aware of any case limiting *Hathaway*. The Second Court of Appeals has applied *Hathaway* to situations in which an employer imposed an arbitration requirement on employees. *See Circuit City Stores, Inc. v. Curry*, 946 S.W.2d 486, 489 (Tex.App.—Fort Worth 1997, orig. proceeding) (alternative holding); *Burlington N. R.R. v. Akpan*, 943 S.W.2d 48, 50–52 (Tex.App.—Fort Worth 1996, no writ).

In this case, it is undisputed that the Employees received a copy of the Policy and that they continued to work for Alamo after receiving the Policy. Therefore, under *Hathaway*, they agreed to arbitrate their claims as a matter of law.

We recognize that the result we reach here appears to be at odds with the primary case relied on by the Employees, *Tenet Healthcare Ltd. v. Cooper*, 960 S.W.2d 386 (Tex.App.—Houston [14th Dist.] 1998, pet. dism'd w.o.j.). In *Tenet*, the employer provided the plaintiff with an employee handbook containing an arbitration provision. The preface to the handbook stated that it was "not intended to constitute a legal contract with any employee or group of employees because that can only occur with a written agreement executed by a facility Executive Director and AMI Senior Executive Officer." *Tenet*, 960 S.W.2d at 386. The handbook also contained an acknowledgment form that was signed by the plaintiff. The form stated that the plaintiff understood that as a condition of continued employment, she agreed to submit any complaints to arbitration and to abide by and accept the arbitrators' decision. But the form also stated that "no written statement or agreement in this handbook concerning employment is binding." *Id.* at 387.

The court held that the agreement to arbitrate was not supported by valid consideration. *See id.* at 389. The court rejected the employer's argument that the

the results of arbitration may serve as consideration for an arbitration agreement. These courts have specifically rejected the argument that an employer must also agree to submit its claims against employees to arbitration. *See, e.g., Michalski v. Circuit City Stores*, 177 F.3d 634, 636–37 (7th Cir.1999); *Johnson v. Circuit City Stores*, 148 F.3d 373, 378–79 (4th Cir.1998). By providing that "binding and final arbitration [is] the sole method for resolving employment disputes" and that the arbitrator's award is "final and binding," the Policy demonstrates Alamo's promise to be bound by the results of arbitration.

parties made mutual promises to arbitrate because the handbook expressly provided that nothing in the handbook regarding employment was binding. *See id.* at 389.

■ The Employees argue that their employee handbook, like the handbook in *Tenet*, demonstrates that Alamo has not agreed to be bound by arbitration. Under the heading "Duration of Employment and Definitions," Alamo's employee handbook states:

> With the exception of temporary employees ..., all employees of the Company are hired for an indefinite period, and either the employee or the Company is free to terminate the employment relationship at anytime for any reason. *No exceptions will be permitted or recognized unless clearly stated in a written agreement signed by a corporate officer and the affected employee.*

(emphasis added). The plaintiffs argue that the emphasized language negates the existence of an agreement to arbitrate because the Policy is not signed by a corporate officer of Alamo. When this language is read in context, however, it is clear that the requirement of a written agreement signed by a corporate officer applies only to agreements to alter at-will status. The Policy expressly provides that it does not alter at-will status. And unlike in *Tenet*, the Policy does not include language indicating that the arbitration provision is not binding on Alamo. As noted above, the Policy provides that arbitration is binding and final. Accordingly, this case is distinguishable from *Tenet*.

The *Tenet* Court also held that the employer's promise to continue the plaintiff's employment was illusory, and thus amounted to no consideration, because the handbook also provided that the plaintiff was an at-will employee. *See id.* at 388–89. In reaching this conclusion, the court relied on *Light v. Centel Cellular Co.,* 883 S.W.2d 642 (Tex.1994).

■ In *Light*, a covenant-not-to-compete case, the supreme court held that consideration for a promise, by either the employee or the employer in an at-will employment, cannot be dependent on a period of continued employment. *See* 883 S.W.2d at 644. The court reasoned that such a promise would be illusory because it fails to bind the promisor, who always retains the option of discontinuing employment in lieu of performance. *See id.* at 645. The court also stated, however, that "[i]f only one promise is illusory, a unilateral contract can still be formed; the non-illusory promise can serve as an offer, which the promisor who made the illusory promise can accept by performance." *Id.* at 645 n. 6.

■ The *Tenet* Court rejected the employer's argument that the plaintiff's continued performance of labor created a unilateral contract to arbitrate. *See Tenet,* 960 S.W.2d at 389. We disagree with the *Tenet* Court's conclusion. Under *Light* and *Hathaway*, a period of employment after an employee has been notified of an arbitration policy forms a unilateral contract. *See Light,* 883 S.W.2d at 645 n. 6; *Hathaway,* 711 S.W.2d at 229.

### CONCLUSION

■ We conclude that the parties entered into a mutually binding agreement to arbitrate disputes arising out of employment. When a party seeking to compel arbitration establishes that an agreement to arbitrate exists under the FAA and the claims raised are within the scope of the agreement, a trial judge has no discretion but to compel arbitration. *See Cantella & Co. v. Goodwin,* 924 S.W.2d 943, 944 (Tex. 1996). Therefore, the petition for writ of mandamus is conditionally granted. We are confident, however, that Judge Thurmond will now grant Alamo's motion to compel arbitration. The writ will issue only upon certification to this court that he has not done so within fifteen days of the date of this opinion.